In the Matter of the Estate of CLARA E. RHODE, Deceased.

Surrogate's Court, Erie County, March 24, 1939.

*Gibbons, Pottle & Pottle* [*Henry W. Pottle* of counsel], fc' ·nry W. Pottle, as executor, etc., and petitioner in one proce€· ;ng.

*Robert J. Schutrom* [*Joseph Swart* of counsel], for the First Trinity Evangelical Lutheran Church, petitioner in two prr·· ·edings.

*Bagley, Wechter & Irvin* [*Joseph A. Wechter* ·,i counsel], for Rosina Braunlich.

HART, S.  An action has been commenced in Supreme Court by Rosina Braunlich against Henry W. Pottle, as executor and trustee under the last will and testament of Clara E. Rhode, deceased, based upon an alleged agreement between the plaintiff and the decedent to make a will in favor of the sister.  The will of Clara E. Rhode, deceased, has been admitted to probate in this court.

The defendants made a motion in the Supreme Court, the purpose of which was to inspect and photostat the papers on which were written the wills of Clara E. Rhode of an earlier date than the one probated.  The order of the Supreme Court provided as follows:

" *Ordered*, that the plaintiff, Rosina Braunlich, produce at the office of Gibbons, Pottle & Pottle, the attorneys for the defendant Pottle, 618–630 Walbridge Bldg. in the City of Buffalo, County of Erie, and State of New York, on the 13th day of January, 1939, at three o'clock in the afternoon of that day, the following documents, to wit:

" 1. Each and all of the paper writings or documents described in the sixth paragraph of the plaintiff's complaint herein and therein alleged to constitute successive wills made by the said decedent, Clara E. Rhode, and the said plaintiff, Rosina Braunlich, to procure, insure or provide for the observance of the agreement in said complaint alleged.

" 2. Each and all of the documents, if any there be, referred to in the sixth paragraph of the plaintiff's complaint in this action, which shall constitute or tend to constitute any contract between the plaintiff and the decedent, Clara E. Rhode, to the effect that each would will, transmit, or leave all of the property of the one first to die to the survivor, or that all of the property of the one first to die should or would become the property of the survivor, but if it shall be claimed that there was no written document constituting the will or any part of the said alleged contract, then that they submit in place and stead thereof an affidavit of the plaintiff duly verified to the effect that the said alleged agreement was orally made, never reduced to writing and that there are no written instruments other than the wills hereinbefore referred to which constitute or tend to constitute the said agreement, and that the said plaintiff allow the defendant, Henry W. Pottle, as executor and trustee, and his attorneys, Gibbons, Pottle & Pottle, to examine and inspect each and all of the documents and paper writings as hereinbefore mentioned, and to make photostatic copies of each and all thereof.

" And it is further ordered that after such inspection, to wit on the said  13th day of January, 1939 at thirty minutes after three o'clock in the afternoon of that day the said plaintiff, or her attor-

neys, produce each and all of the aforementioned documents at the office and place of business of Buffalo Blue Print Company, in the Andrews Bldg. 36 Court St., in the City of Buffalo, County of Erie and State of New York, and that at said time and place the said plaintiff permit and allow the said Buffalo Blue Print Company to make or take a photostatic copy of each and every document hereinbefore mentioned."

[Signature of judge and date of entry.]

The attorneys for the executor commenced an inquiry proceeding in this court, requiring that the said Rosina Braunlich be ordered to attend the inquiry and be examined accordingly, and deliver certain paper writings purporting to be last wills and testaments made by Clara E. Rhode, prior to the instrument admitted to probate by the Surrogate's Court, as and for her last will and testament.

The attorney for the First Trinity Evangelical Lutheran Church, a legatee under the last will and testament of the said decedent, has instituted two proceedings, one under section 137 of the Surrogate's Court Act, which provides as follows:

" § 137. Petition to compel production of will. Whenever it shall appear by petition of any person claiming to be interested in the estate of a decedent, including a creditor, that there is reasonable ground to believe that any person has destroyed, retained, concealed, or is conspiring with others to destroy, retain or conceal a will or testamentary instrument of a decedent, or has any knowledge as to such facts, the court must make an order requiring the respondent to attend and be examined in the premises, and may in such order or otherwise in the proceeding require the production of any will or testamentary instrument. Service thereof must be made by delivery of a certified copy thereof to the person or persons named therein and the payment or tender to each of the sum required by law to be paid or tendered to a witness who is subpœnaed to attend a trial in Surrogate's Court."

The other proceeding was brought under subdivision 3 of section 249-t of the Tax Law, which is as follows:

" 3. When it is made to appear to a surrogate of any county in this State that a safe deposit company, trust company, bank, person or corporation has in its possession or under its control papers of a decedent of whose estate such court has jurisdiction or that the decedent had leased from such a corporation a safe deposit box, and that such papers or such safe deposit box may contain a will of the decedent, a deed to a burial plot in which the decedent is to be interred or a policy of insurance issued in the name of the decedent and payable to a named beneficiary, he may make an

order directing such safe deposit company, trust company, bank, person or corporation to permit a person named in the order to examine such papers or safe deposit box and to make an inventory of such papers or of the contents of such safe deposit box in the presence of a representative of the Tax Commission and an officer of such safe deposit company, trust company, bank or corporation, or agent of such person, and if a paper purporting to be a will of the decedent, the deed to a burial plot is found among such papers, or in such box, to deliver such will to the clerk of the Surrogate's Court of such county, or such deed to such person as may be designated in such order, or such policy of insurance to the beneficiary named therein. The clerk of said court shall furnish a receipt upon the delivery to him of the will."

The inquiry proceeding will be considered first in this opinion.

Counsel for the executor takes the position, and quite correctly, that one of the highest obligations resting upon the executor in any estate, where an action has been brought to establish an agreement destructive of the will, is to use his best efforts to sustain the will by all reasonable and proper means, and this is being done in this case. Counsel further states in his brief that it is not only within the power of the surrogate to help, aid and assist his officer, the executor, to perform his duties but it is his absolute, unqualified duty to do so. Surely the executor cannot expect the Surrogate's Court to become his ally in the litigation pending in the Supreme Court. It is the duty of the Surrogate's Court fairly, impartially and conscientiously to decide matters brought before it, and this is what this court proposes to do.

It was held in *Matter of Denham* (182 N. Y. Supp. 90) that a discovery proceeding cannot be used for the purpose of discovering and ascertaining evidence to be used in another proceeding. This court holds that neither can it be used to discover the names of witnesses, for it is very plain after what transpired in the Supreme Court, and from all the surrounding circumstances, that this is the purpose of this inquiry proceeding. (See, also, *Matter of Ehrlich*, 126 Misc. 673; *Matter of Ryan*, 115 id. 472; *Matter of Soule*, 187 N. Y. Supp. 828.)

The court will now consider the other two proceedings.

*Matter of Hardy* (216 N. Y. 132) held that a proceeding of this nature is an independent proceeding and after so holding remitted it to the Surrogate's Court for a further hearing and a determination of the question involved upon the merits.

In *Matter of Gowdey* (215 App. Div. 369) the only question presented and passed upon was whether or not the petitioner was an interested person so as to permit her to commence a proceeding

for the production of the alleged last will and testament of Margaret Gowdey, deceased. In the instant case that is not the question before the court, and that decision adds nothing to the force of the argument of the petitioner.

It was said in *Matter of Kennedy* (164 Misc. 796, 798): " As has frequently been noted (*Matter of Hardy*, 216 N. Y. 132, 137; *Matter of Gillender*, 98 Misc. 521, 523; *Matter of Jussila*, 104 id. 579, 580), and is wholly obvious to any person acquainted with Surrogate's Court practice, a proceeding to secure the production of a purported testamentary instrument is an independent special proceeding which has no relation to any other proceeding, the institution of which is authorized by the Surrogate's Court Act. (*Matter of Yung*, 216 App. Div. 595, 598.) Relief therein has consequently been authorized even after another will had been probated. (*Matter of Hardy*, 216 N. Y. 132, 137; *Matter of Gowdey*, 215 App. Div. 369; *Matter of Work*, 151 id. 707), and where an appeal from a decree of probate was pending (*Matter of Yung*, 216 App. Div. 595, 598), *provided there was a demonstration of any reasonable ground for belief that the applicant had or might possess some interest which would be affected by the production of the instrument.*"

In *Matter of Yung* (216 App. Div. 595) the court said: " The proceeding comes squarely under the provisions of section 137 of the Surrogate's Court Act. The petitioner has the right to have the prior will filed for examination and is correct in urging such right on the theory stated in respondent's brief that ' in the event that the contested will matter which is on appeal should be reversed and the verdict of the jury reinstated, and the will of June 24, 1924, declared invalid, then this alleged prior will, if valid, would be the last will and testament of the deceased,' and also that ' if the prior will on inspection is identical with the contested will and appears to be authentic, and should leave nothing under its terms to the contestants of the will of June 24, 1924, then the continuation of an appeal in the contested will matter would be a waste of time, useless and of no avail. The contestants would not be put to the expense of an appeal; the proponents would be benefited; the administration of the estate which is now suspended by the appeal would be renewed; real property could be disposed of and legacies paid, which cannot be done while the appeal is pending.'

" The respondent's argument is logical *and shows clearly the intent of the statutory provision incorporated in section 137 of the Surrogate's Court Act.*"

The following words in *Matter of Work* (151 App. Div. 707) are quite significant and applicable: " However, it will be observed that the language of the statute is, ' on the return of the citation,

the court may order the suspected person or persons,' etc. While the petition may have been sufficient to justify the issuance of citation, the surrogate was not required to proceed further, upon objection being made, *unless the petitioner showed some ground or reason for the suspicion that there were other codicils, and that, if they were produced, it would appear that he was entitled to an interest in the estate.*"

In the instant case there is no interest inuring to the benefit of the applicant which would be affected by the production of the will in question. The applicant already knows through the proceeding in the Supreme Court what the will contains. All that is left unknown is the names of the witnesses to the will.

Knowing full well that the purpose and intent of these two proceedings is to obtain the names of the witnesses to the wills now in the custody of the plaintiff, this court feels that neither section was designed for this purpose. The proper proceeding was instituted in the proper tribunal. While this court may not be in accord with the decision, nevertheless the Supreme Court has spoken, limiting the extent to which all parties shall go, and any decision favorable to the petitioners would be tantamount to a reversal of that tribunal. Concededly, the Surrogate's Court has no such power.

Counsel for the legatee states in his brief: " It being the rule, therefore, that plaintiff, in attacking the will of the decedent, must prove his case by the clear and undisputed evidence, there should be no burden cast in the paths of the defendants in seeking to sustain the decedent's testamentary purpose." If any burden has been cast in the path of the defendant in seeking to determine the testator's testamentary purpose, it has been done by the Supreme Court, and, as hereinbefore indicated, this court has no power to remove the burden.

The inquiry proceeding and the proceedings brought under section 137 of the Surrogate's Court Act and subdivision 3 of section 249-t of the Tax Law are hereby dismissed.

Submit order.